1  BRIAN L. DAVIDOFF (SBN 102654)
   BDavidoff@ggfirm.com
2  KEITH PATRICK BANNER (SBN 259502)
   KBanner@ggfirm.com
3  COLE F. NICHOLAS (SBN 354027)
   CNicholas@ggfirm.com
4  GREENBERG GLUSKER FIELDS CLAMAN &
   MACHTINGER LLP
5  2049 Century Park East, Suite 2600
   Los Angeles, California  90067
6  Telephone:     310-553-3610
   Facsimile:     310-553-0687
7
   Attorneys for Debtor and Debtor-in-Possession
8  MARCHEY GROUP, INC.

9

10                 UNITED STATES BANKRUPTCY COURT

11                 CENTRAL DISTRICT OF CALIFORNIA

12                    SAN FERNANDO VALLEY

13

|   |   |
|---|---|
| In re: | Case No. 1:24-bk-10326-MB |
| MARCHEY GROUP, INC., | Chapter 11 |
| Debtor and Debtor-in-Possession. | **DEBTOR'S SUBCHAPTER V PLAN OF REORGANIZATION** |

14
15
16
17                 **Confirmation Hearing**
                   Date:      July 30, 2024
18                 Time:      1:30 p.m.
                   Place:     Courtroom 303
19                            21041 Burbank Boulevard
                              Woodland Hills, CA 91367
20
                   -Or by ZoomGov:
21
                   Meeting URL:
22                    https://cacb.zoomgov.com/j/1616305462
                   Meeting ID: 161 630 5462
23                 Password:   524393
                   Telephone:  1 (669) 254 5252 or
24                             1 (646) 828 7666
25
26
27
28

*Left margin (vertical text):* GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California  90067

# TABLE OF CONTENTS

**Page**

I.    GENERAL DISCLAIMERS ............................................................................. 1

II.   DEFINITIONS AND RULES OF CONSTRUCTION ..................................... 2

III.  STATUTORY PLAN DISCLOSURES............................................................ 2

    A.    Brief History of Business Operations of the Debtor ............................ 2

    B.    Liquidation Analysis ........................................................................... 3

    C.    Plan Projections .................................................................................. 5

IV.   PLAN SUMMARY......................................................................................... 5

V.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS
     UNDER THIS PLAN ..................................................................................... 6

    A.    Unclassified Claims ............................................................................ 6

        1.    Administrative Expenses .......................................................... 7

    B.    Classified Claims ................................................................................ 8

        1.    Class 1 – Secured Claim of ACS ............................................. 8

            a.    Class 1 Claim ................................................................ 8
            b.    Impairment and Voting ................................................. 8
            c.    Estimated Plan Distribution (%) .................................. 8
            d.    Treatment ...................................................................... 8

        2.    Class 2 – Secured Claim of BMW ........................................... 9

            a.    Class 2 Claim ................................................................ 9
            b.    Impairment and Voting ................................................. 9
            c.    Estimated Plan Distribution (%) .................................. 9
            d.    Treatment ...................................................................... 9

        3.    Class 3 – Settling Guaranty Claims ......................................... 9

            a.    Class 3 Claims ............................................................... 9
            b.    Impairment and Voting ............................................... 11
            c.    Estimated Plan Distribution (%) ................................ 11
            d.    Treatment .................................................................... 11

        4.    Class 4 – General Unsecured Claims ..................................... 12

            a.    Claims ......................................................................... 12
            b.    Impairment and Voting ............................................... 12
            c.    Estimated Plan Distribution (%) ................................ 12
            d.    Treatment .................................................................... 12

        5.    Class 5 – Interest Holders ...................................................... 12

            a.    Claims ......................................................................... 12
            b.    Impairment and Voting ............................................... 12
            c.    Treatment .................................................................... 12

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

**TABLE OF CONTENTS**
(continued)

Page

VI.    MEANS OF EFFECTUATING THIS PLAN AND IMPLEMENTATION OF
THIS PLAN ................................................................................................ 13

    A.    Funding for This Plan ....................................................................... 13
    B.    The Effective Date ............................................................................ 13
    C.    The Reorganized Debtor ................................................................... 13
    D.    Disbursing Agent .............................................................................. 13
    E.    Distributions ..................................................................................... 14

VII.   EFFECT OF CONFIRMATION OF THIS PLAN ......................................... 14

    A.    Binding Effect ................................................................................... 14
    B.    Revesting of Property ....................................................................... 15
    C.    Free and Clear ................................................................................... 15
    D.    Discharge .......................................................................................... 15
    E.    Exculpations and Releases, and Limitation of Liability ................... 16
    F.    Injunctions ........................................................................................ 16
    G.    Executory Contracts and Unexpired Leases ..................................... 17
    H.    Exemption from Transfer Taxes ....................................................... 17
    I.    Administrative Claim Bar Date ......................................................... 18

VIII.  MISCELLANEOUS PROVISIONS .............................................................. 18

    A.    Disputed Claims ................................................................................ 18
    B.    Modifications of the Plan .................................................................. 18
    C.    Post-Confirmation Status Reports ..................................................... 19
    D.    Default Provisions and Post-Confirmation Conversion/Dismissal ...... 19
    E.    Tax Consequences ............................................................................ 19
    F.    Risk Factors ...................................................................................... 20

        1.    Failure to Secure Confirmation .............................................. 20
        2.    Modification of the Plan ......................................................... 21
        3.    The Debtor May Not Meet the Projections ............................. 21

    G.    Final Decree ...................................................................................... 21

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1    Debtor and debtor in possession Marchey Group Inc., (the "Debtor"), hereby submits this

2    Subchapter V Plan of Reorganization (this "Plan") in connection with the above captioned

3    subchapter V chapter 11 bankruptcy case.[1]

4    **I.    GENERAL DISCLAIMERS**

5    THIS PLAN AND THE ATTACHED EXHIBITS ("COLLECTIVELY, THE "PLAN

6    DOCUMENTS") SHOULD BE READ CAREFULLY. THEY EXPLAIN THE TREATMENT

7    THAT CREDITORS AND INTEREST HOLDERS CAN EXPECT TO RECEIVE UNDER THE

8    PLAN, IF THE PLAN IS CONFIRMED BY THE COURT.  PRIOR TO DECIDING WHETHER

9    AND HOW TO VOTE ON THE PLAN, EACH HOLDER OF A CLAIM OR INTEREST THAT

10   IS ENTITLED TO VOTE SHOULD CONSIDER CAREFULLY ALL OF THE INFORMATION

11   IN THE PLAN DOCUMENTS, INCLUDING THE RISK FACTORS DESCRIBED HEREIN.

12   THE DEBTOR'S PROJECTIONS AND OTHER FINANCIAL DATA RELIED ON TO

13   FORMULATE THIS PLAN ARE CONTAINED IN THE PLAN EXHIBITS.  THE DEBTOR

14   HAS UNDERTAKEN EFFORTS TO CONFIRM THAT EACH OF THE ASSUMPTIONS

15   UNDERPINNING THE PROJECTIONS ARE REASONABLE AND SUPPORTED BY

16   RELIABLE ECONOMIC DATA.  HOWEVER, THERE HAS BEEN NO INDEPENDENT

17   AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THE PLAN DOCUMENTS.

18   THE PLAN DOCUMENTS WERE COMPILED FROM INFORMATION OBTAINED FROM

19   NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTOR'S

20   KNOWLEDGE, INFORMATION AND BELIEF.  FURTHER, ALTHOUGH THE DEBTOR

21   HAS UNDERTAKEN REASONABLE EFFORTS TO ASCERTAIN THAT EACH OF THE

22   STATEMENTS MADE IN THE PLAN DOCUMENTS IS TRUE AND CORRECT IN EVERY

23   MATERIAL RESPECT, NO ASSURANCE CAN BE GIVEN THAT THE STATEMENTS ARE

24   WITHOUT ERROR.

25   NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR

26   DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED

27

28   ───────────────
[1] The Debtor filed a voluntary petition on March 1, 2024 (the "Petition Date") commencing this subchapter V
bankruptcy case.

54814-00002/5173817.4

SUBCHAPTER V PLAN OF
REORGANIZATION

1   HEREIN.

2      CERTAIN STATEMENTS CONTAINED IN THE PLAN DOCUMENTS, BY NATURE,

3   ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE

4   CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL

5   OUTCOMES.

6      HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD NOT CONSTRUE THE

7   CONTENTS OF THE PLAN AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR

8   TAX ADVICE.  THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN

9   LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS

10   CONCERNING THE PLAN AND THE TRANSACTIONS CONTEMPLATED HEREBY.

11      UNLESS THE COURT ORDERS OTHERWISE, NO STATEMENTS ARE

12   AUTHORIZED CONCERNING THE DEBTOR OR THE PLAN THAT ARE NOT

13   CONSISTENT WITH INFORMATION CONTAINED IN THE PLAN.

14   **II.   DEFINITIONS AND RULES OF CONSTRUCTION**

15      The Plan incorporates by reference (i) the definitions set forth in Sections 101, 1182 and

16   1191(d) of the Bankruptcy Code, and (ii) the rules of construction set forth in sections 102 and

17   1191(c) of the Bankruptcy Code.  All defined words and phrases, whether defined in the Plan or

18   incorporated by reference, are capitalized in the Plan.

19   **III.   STATUTORY PLAN DISCLOSURES**

20      Section 1190(1) of the Bankruptcy Code requires that a subchapter V plan include: (A) a

21   brief history of the business operations of the Debtor; (B) a liquidation analysis; and (C) projections

22   with respect to the ability of the Debtor to make payments under this Plan. 11 U.S.C. § 1190(1).

23      **A.   Brief History of Business Operations of the Debtor**

24      The Debtor was conceived out of a vision to transform the appliance parts industry.  The

25   Debtor's business follows a "reseller" business model, whereby consumers order appliance parts

26   through online portals such as Amazon and eBay, and the Debtor obtains the ordered part from

27   business-to-business distributors and ships the product directly to the consumer.  The moment a

28   consumer orders a particular appliance part through one of the Debtor's seller's portals, the Debtor

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

2

SUBCHAPTER V PLAN OF
REORGANIZATION

1   immediately orders that part from the applicable vendor, which is invoiced and delivered to the

2   Debtor.  The Debtor, in turn, promptly ships the ordered part to the consumer from its warehouse.

3   This "reseller" approach proved successful, and the Debtor experienced significant growth, with a

4   year-on-year increase in revenue from $2,072,224 in 2015 to $9,676,450 in 2023.

5          The Debtor generally does not keep an inventory of appliance parts other than a limited

6   amount of aftermarket inventory left from the Debtor's venture into that space.  The Debtor ran

7   into difficulties soon after it ventured into the aftermarket product space, as a significant amount of

8   capital was needed to purchase aftermarket inventory and the Debtor experienced a myriad of issues

9   with the overseas manufacturers of such products, including quality control.

10         With the aftermarket product venture consuming much needed cash, the Debtor turned to a

11  series of loans for liquidity, including various "merchant cash advance loans" to support the

12  business.  Although the Debtor has since abandoned the aftermarket product space, the exorbitant

13  payments attributable to these loans put a strain on the Debtor's liquidity.  As of the Petition Date,

14  the Debtor's monthly commitments on such loans totaled nearly $250,000, not including credit card

15  payments and other operational expenses, with many of the lenders automatically withdrawing

16  funds from the Debtor's bank account on a weekly basis.  This left the Debtor with insufficient cash

17  to support operations.  In light of this urgent liquidity crisis, the Debtor commenced this chapter 11

18  case.  For a more detailed discussion of the history of the Debtor's business and the circumstances

19  that led to this bankruptcy filing, please see the *Declaration of Maruf Bakhramov in Support of*

20  *First Day Motions* [Docket No. 8] and the *Declaration of Maruf Bakhramov* accompanying the

21  concurrently filed *Debtor's Brief in Support of Confirmation of the Debtor's Subchapter V Plan of*

22  *Reorganization*.

23         **B.      Liquidation Analysis**

24         Under the "Best Interest Test", if a claimant or interest holder is in an impaired class and

25  that claimant or interest holder does not vote to accept this Plan, then that claimant or interest holder

26  must receive or retain under this Plan property of a value not less than the amount that such holder

27  would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

28  / / /

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1       In a chapter 7 case, a debtor's nonexempt assets are typically sold by a chapter 7 trustee.

2  Secured creditors are paid first from the sale proceeds of assets that are encumbered by the secured

3  creditor's lien. Subject to allowed exemptions, and after the payment of costs of sale, any remaining

4  proceeds would be available to pay, in the following order, (1) administrative claims, and (2)

5  unsecured creditors, according to their rights to priority. Unsecured creditors with the same priority

6  share in proportion to the amount of their allowed claim in relationship to the amount of total

7  allowed unsecured claims. Finally, the Debtor receives the balance, if any, that remains after all

8  creditors are paid.

9       For the Court to be able to confirm this Plan, the Court must find that all creditors and

10  interest holders who do not accept this Plan will receive at least as much under this Plan as such

11  holders would receive under a chapter 7 liquidation of the Debtor. The Debtor submits that this

12  requirement is clearly met.

13       The impaired classes under this Plan consist of Classes 2, 3 and 4. The Debtor must

14  therefore satisfy the "best interest of creditors test" with respect to members of Classes 2, 3 and 4

15  that do not vote to accept this Plan.

16       Attached as **Exhibit 1** hereto is a demonstration of the liquidation analysis in a hypothetical

17  chapter 7 case as of May 31, 2024, if the case were to be converted to chapter 7 instead of the Plan

18  being confirmed. As shown in **Exhibit 1**, all creditors and interest holders will receive as much or

19  more under this Plan as they would receive under a Chapter 7 liquidation of the Debtor. *See*

20  *generally* Exh. 1. In a hypothetical chapter 7 liquidation, the Debtor projects that there would be

21  sufficient funds to pay only Class 1 claims in full, leaving insufficient funds to pay for all of the

22  administrative expenses of the chapter 7 trustee, his professionals, and the chapter 11 administrative

23  professionals. Moreover, the unsecured creditors in Classes 3 and 4 would not receive any

24  payments. Under this Plan, unsecured creditors in Classes 3 and 4 are projected to, and will, receive

25  a recovery. Accordingly, this Plan provides at least as much – and more – to creditors, and therefore

26  meets the requirements of the "best interest of creditors test".

27  / / /

28  / / /

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

## C.    Plan Projections

The Debtor's three-year financial projections (i.e., the time period applicable to this Plan) are attached as **Exhibit 2** hereto (the "Projections"). The Projections are based on the Debtor's historical operations and performance and, although the Debtor believes the Projections are reasonable and based on reliable data, the projections are forward-looking and therefore there can be no assurance that such projections will reflect actual outcomes.

## IV.    PLAN SUMMARY

This Plan will be funded by a combination of (1) the Debtor's cash on hand on the Effective Date (estimated at $50,000); and (2) the Debtor's projected disposable income (as defined in section 1191(d) of the Bankruptcy Code). In addition, to fund distributions to the Class 3 Settling Guaranty Claims (as defined and discussed below), the Debtor's sole shareholder, officer and director Maruf Bakhramov ("Mr. Bakhramov") will contribute the following to Class 3: (1) on the Effective Date, he will personally fund the lesser of (i) $100,000; or (ii) the total amount of Class 3 Settling Guaranty Claims; and (2) Mr. Bakhramov has agreed to voluntarily reduce his salary by $5,000 per month during the Plan period, with such amount being paid to Class 3 Settling Guaranty Claims.

| CLASS AND/OR CLAIM TYPE | TREATMENT | IMPAIRED STATUS/ VOTING STATUS |
|---|---|---|
| Unclassified Claims | Paid in full on the later of (i) the Effective Date; (ii) the date the Court enters an order allowing such claim; or (iii) such other date as agreed to by the Holder of such claim (*See* Section V(A), below for detail). | Not Entitled to Vote |
| Class 1<br><br>Senior Secured Loan of ACS | Class 1 consists of the secured claim of Amazon Capital Services, Inc. ("ACS"). The secured claim of ACS will be paid post-petition in the ordinary course pursuant to the terms of the Debtor's pre-petition agreement with ACS in the amounts set forth in the Projections. | Unimpaired<br>Not Entitled to Vote |
| Class 2<br><br>Secured Claim of BMW | Class 2 consists of the secured claim of BMW Bank of North America ("BMW") regarding the 2023 BMW XM vehicle used by co-obligor, Mr. Bakhramov. Mr. Bakhramov will pay BMW from his own salary for all | Impaired<br>Entitled to Vote |

GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

| CLASS AND/OR CLAIM TYPE | TREATMENT | IMPAIRED STATUS/ VOTING STATUS |
|---|---|---|
| | payments due under the underlying pre-petition agreement with BMW. There will be no distributions made by the Debtor to Class 2. | |
| Class 3<br><br>Settling Guaranty Claims | Class 3 Settling Guaranty Claims (as defined and discussed below) will receive: (i) a pro rata share of $100,000 on the Effective Date funded by Mr. Bakhramov, or such lesser amount equaling the aggregate of all Class 3 Settling Guaranty Claims; and, as applicable (ii) a pro rata share of $10,000 per month ($5,000 of which is payable from Mr. Bakhramov's voluntary reduction of salary) during the three-year Plan term. The projected total to Class 3 Settling Guaranty Claims is $460,000, or such lesser amount equaling the aggregate of all Class 3 Settling Guaranty Claims. Any portion of the $10,000 per month payment allocated to Class 3 Settling Guaranty Claims that exceeds the aggregate amount of Class 3 Settling Guaranty Claims will be distributed to Class 4 general unsecured claims. | Impaired<br>Entitled to Vote |
| Class 4<br><br>General Unsecured Claims | Class 4 consists of holders of general unsecured claims that do not qualify for or have not opted into the Class 3 Settling Guaranty Claims. Holders of Class 4 claims will receive a pro rata share of $5,000 per month during the three-year Plan term (projected total of $180,000), plus any portion of the $10,000 per month payment allocated to Class 3 that exceeds the aggregate amount of Class 3 Settling Guaranty Claims. | Impaired<br>Entitled to Vote |
| Class 5<br><br>Interest Holders | Class 5 consists of the equity interests of Mr. Bakhramov in the Debtor. Mr. Bakhramov will retain his interest in the Debtor post-confirmation. | Unimpaired<br>Not Entitled to Vote |

## V.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THIS PLAN

As required by the Bankruptcy Code, this Plan classifies claims and interests in various classes according to their right to priority. This Plan states whether each class of claims or interests is impaired or unimpaired. This Plan further provides the treatment each class will receive.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

**A.**    **Unclassified Claims**

Certain types of claims are not placed into voting classes; instead, they are unclassified. They do not vote on this Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Debtor has not placed the following claims in a class:

**1.**    **Administrative Expenses**

Administrative expenses are claims for costs or expenses of administering the Debtor's chapter 11 case which are allowed under Bankruptcy Code Section 507(a)(2). The Bankruptcy Code requires that all administrative claims be paid on the Effective Date unless a particular claimant agrees to different treatment.

The following table lists all of the Debtor's § 507(a)(2) administrative claims and their treatment under this Plan:

| ADMINISTRATIVE CLAIM | AMOUNT OWED[2] | TREATMENT |
|---|---|---|
| United States Bankruptcy Court | $0.00 (est.) | Paid in Full on the Effective Date |
| Office of the U.S. Trustee | $0.00 (est.) | Paid in Full on the Effective Date |
| J.P. Fritz, Subchapter V Trustee | $20,000.00 (est.) | Paid on the later of: (a) the Effective Date; (b) the date the Court enters an order allowing such fees and costs; or (c) a later date agreed to between the Debtor and the Subchapter V Trustee. |
| Greenberg Glusker LLP, counsel to the Debtor | $50,000.00 (est.)[3] | Paid on the later of: (a) the Effective Date; (b) the date the Court enters an order allowing such fees and costs; or (c) a later date agreed to between the Debtor and Greenberg Glusker. |
| Post-Petition Tax Obligations | $0.00 (est.) | Paid in Full on the Effective Date |
| Post-Petition non-professional fee and non-tax administrative claims | $319,366.00 (est.) | Paid in full post-confirmation in the ordinary course or following the entry of an order of the Court if a dispute arises. |

---

[2] Estimated as of the Effective Date.
[3] Estimated amount due after application of the allowed post-petition retainer payment.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1    The Court must approve all professional fees and costs listed in the table above.  For all

2  professional fees, the applicable professional must file and serve a properly noticed fee application

3  and the Court must enter an order allowing the requested fees and expenses.  Only the amount of

4  fees and costs allowed by the Court will be paid under this Plan.  The Debtor's professionals may

5  incur fees and expenses in excess (and possibly substantially in excess) of the figures set forth

6  above.

7    The administrative claim amounts set forth above represent the Debtor's best estimate as to

8  the amount of allowed administrative claims in this case.  The actual administrative claims may

9  vary.  By voting to accept this Plan, creditors are not acknowledging the validity of, or consenting

10  to the amount of, any of these administrative claims, and creditors are not waiving any of their

11  rights to object to the allowance of any of these administrative claims.  Similarly, professionals

12  who have been employed in this case are not being deemed to have agreed that the figures contained

13  herein represent any ceiling on the amount of fees and costs that they have incurred or are entitled

14  to seek to be paid pursuant to Court order as such fees and costs are estimates provided at the time

15  of the preparation of this Plan.

16    **B.    Classified Claims**

17        1.    **Class 1 – Secured Claim of ACS**

18            *a.    Class 1 Claim*

19    ACS filed two proofs of claim in this bankruptcy case: (i) Claim No. 14 for outstanding

20  secured loan obligations totaling $86,458.61; and (ii) Claim No. 15 for outstanding secured loan

21  obligations totaling $20,279.83.  As of the Effective Date, all outstanding amounts set forth in

22  Claim No. 15 have been paid in full, and the remaining balance to be paid under Claim No. 14 is

23  estimated to be $50,690.00 (the "Outstanding ACS Balance").

24            *b.    Impairment and Voting*

25    Class 1 is unimpaired and not entitled to vote on this Plan.

26            *c.    Estimated Plan Distribution (%)*

27    100%

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1    ### d.    *Treatment*

2    The Debtor will pay the Outstanding ACS Balance in full pursuant to the terms of the

3    underlying pre-petition agreement between the Debtor and ACS, as such agreement may have been

4    amended or modified by the Debtor and ACS.

5    ### 2.    Class 2 – Secured Claim of BMW

6    ### a.    *Class 2 Claim*

7    BMW filed Proof of Claim No. 12 for outstanding loan obligations totaling $135,433.57

8    secured by a 2023 BMW XM vehicle.  As detailed in the documents accompanying BMW proof

9    of claim, Mr. Bakhramov is a co-obligor on the subject loan.  The subject vehicle is used exclusively

10   by Mr. Bakhramov.  Since the Petition Date, Mr. Bakhramov has personally made all payments on

11   the subject loan.   As of the Effective Date, the Debtor estimates $130,246.00 remains outstanding

12   on the subject loan.

13   ### b.    *Impairment and Voting*

14   Class 2 is impaired and entitled to vote on this Plan.

15   ### c.    *Estimated Plan Distribution (%)*

16   0%

17   ### d.    *Treatment*

18   Mr. Bakhramov will continue to make all payments from his salary or other resources on

19   the subject loan directly to BMW.  No distributions will be made by the Debtor and any obligation

20   of the Debtor will be discharged under this Plan.  The confirmation of the Plan will not alter or

21   affect BMW's rights and remedies against Mr. Bakhramov and/or the subject vehicle pursuant to

22   the underlying agreement or applicable law.

23   ### 3.    Class 3 – Settling Guaranty Claims

24   ### a.    *Class 3 Claims*

25   Class 3 Settling Guaranty Claims consist of claims held by claimants that satisfy the

26   following criteria: (i) the claimant holds an allowed unsecured claim against the estate; (ii) the

27   claimant may seek to enforce the claim against non-debtor Mr. Bakhramov personally as a co-

28   obligor, guarantor, or otherwise pursuant to the pre-petition agreement(s) relating to such claim;

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1    (iii) the claimant has executed and timely delivered a ballot voting in favor of confirmation of the

2    Plan; and (iv) the claimant has executed and timely delivered a ballot affirmatively electing to treat

3    its allowed claim as a Class 3 claim (and not as a Class 4 claim), and has thereby agreed to the

4    following irrevocable release:

5    **Claimant acknowledges and agrees that by electing to treat its claim as a Class
3 claim under the Plan, claimants irrevocably agrees to the following:  Except
for the treatment of its claim under Class 3 of the Plan, effective as of the
Effective Date, each claimant electing to treatment under Class 3 of the Plan
(a "_Class 3 Creditor_"), for itself and its respective predecessors, successors,
assigns, subsidiaries, affiliates, and current and former agents, in
consideration of the payments to be made to such Class 3 Creditor including
the additional contribution by Mr. Bakhramov, hereby agrees to irrevocably
release (the "_Class 3 Release_") Maruf (Mark) Bakhramov, and his successors,
assigns, subsidiaries and affiliates, and each of the foregoing party's respective
current and former agents (the "_Released Parties_"), from any and all claims,
obligations, rights, suits, damages, causes of action, and liabilities, whether
known or unknown, foreseen or unforeseen, existing or hereafter arising,
arising prior to the Effective Date, except for any payments to such Class 3
Creditor as provided for in the Plan.  As part of the Class 3 Release, each Class
3 Creditor, for itself and its respective successors, assigns, subsidiaries,
affiliates, and current and former agents, shall acknowledge that it is familiar
with California Civil Code section 1542, which provides that:**

**1542.  A GENERAL RELEASE DOES NOT EXTEND TO
CLAIMS THAT THE CREDITOR OR RELEASING PARTY
DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER
FAVOR AT THE TIME OF EXECUTING THE RELEASE
AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE
MATERIALLY AFFECTED HIS OR HER SETTLEMENT
WITH THE DEBTOR OR RELEASED PARTY**

**Each Class 3 Creditor, for itself and its respective predecessors, successors,
assigns, subsidiaries, affiliates, and current and former agents, hereby waives
and relinquishes all rights and benefits that each party has or may have under
California Civil Code section 1542 or any similar law; each such party
expressly assumes the risk that the facts or law may be different than it now
believes them to be, and each party agrees that this release shall be effective
notwithstanding any such differences.**

**To the extent that any Class 3 Creditor has commenced any action or
proceeding against the Released Parties for a claim, debt or liability released
hereunder, such Class 3 Creditor shall take all appropriate actions to dismiss
such action or proceeding no later than 14 days following the Effective Date.**

**As of the Effective Date, all entities that have held, currently hold or may hold
a claim, debt or liability that is extinguished pursuant to the foregoing release**

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

**are permanently enjoined from taking any of the following actions against the Released Parties: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Released Parties; and (v) commencing or continuing any action in any manner, in any place, that does not comply with or is inconsistent with the provisions of the foregoing release.   By accepting a Class 3 distribution under this Plan, each holder of an allowed claim receiving a Class 3 distribution pursuant to this Plan shall be deemed to have specifically consented to the injunctions set forth herein.**

### b.    *Impairment and Voting*

Class 3 is impaired and entitled to vote on this Plan.

### c.    *Estimated Plan Distribution (%)*

30% - 100%.  The Debtor estimates that approximately $1.5 million in claims are eligible to opt into the Class 3 Settling Guaranty Claims.  As such, the Debtor estimates that Class 3 Creditors will receive a minimum distribution of 30% during the term of the Plan, which may increase up to 100% depending upon how many eligible claimants opt into Class 3.

### d.    *Treatment*

Immediately on or before the Effective Date of the Plan, Mr. Bakhramov will contribute the lesser of the following to Class 3 Settling Guaranty Claims (the "Class 3 Settlement Payment"): (i) $100,000; or (ii) the total amount of Class 3 Settling Guaranty Claims.  Mr. Bakhramov's funding of the $100,000 Class 3 Settlement Payment will be conditioned upon the following: (i) the Court entering an order approving the Plan in substantially similar terms as set forth herein; (ii) the occurrence of the Effective Date.

In addition to a pro rata share of the Class 3 Settlement Payment holder of Class 3 Settling Guaranty Claims will receive a pro rata share of $10,000 per month ($5,000 of which is payable from Mr. Bakhramov's voluntary reduction of salary) during the three-year plan term (the "Class 3 Plan Payments").

The projected total distribution to Class 3 Settling Guaranty Claims (i.e., the aggregate of the Settlement Plan Payment and Class 3 Payments) is $460,000, or such lesser amount equaling

1  the aggregate of all Class 3 Settling Guaranty Claims.

2       Any portion of the Class 3 Plan Payments exceeding the aggregate amount of allowed

3  Class 3 Settling Guaranty Claims will be distributed to Class 4 general unsecured claims.  Class 4

4  general unsecured claims will not receive any portion of the Class 3 Settlement Payment.

5        **4.**    **Class 4 – General Unsecured Claims**

6         ***a.***    ***Claims***

7    Class 4 consists of holders of general unsecured claims that have not opted into Class 3,

8  or otherwise do not qualify to opt into Class 3.

9         ***b.***    ***Impairment and Voting***

10    Class 4 is impaired and entitled to vote on this Plan.

11         ***c.***    ***Estimated Plan Distribution (%)***

12    18% - 21%.   In the event that all claims that the Debtor estimates are eligible to opt into

13  the Class 3 Settling Guaranty Claims do elect to opt in, the remaining claims that are ineligible to

14  opt into Class 3 total approximately $1 million.  In that case, the Debtor estimates that Class 4

15  General Unsecured Claims will receive a minimum distribution of approximately 18%.  If no

16  eligible claims elect to opt into the Class 3 Settling Guaranty Claims, the Debtor estimates that

17  Class 4 General Unsecured Claims will receive a maximum distribution of approximately 21%.[4]

18         ***d.***    ***Treatment***

19    Holders of Class 4 claims will receive a pro rata share of $5,000 per month during the three-

20  year plan term (projected total of $180,000), plus any portion of the Class 3 Plan Payments

21  exceeding the aggregate amount of allowed Class 3 Settling Guaranty Claims.

22        **5.**    **Class 5 – Interest Holders**

23         ***a.***    ***Claims***

24    Class 5 consists of the equity interests of Mr. Bakhramov in the Debtor.

25         ***b.***    ***Impairment and Voting***

26    Class 5 is unimpaired and not entitled to vote on this Plan.

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

---

[4] In such scenario, the unsecured creditors pool would equal approximately $2.5 million and Class 4 claimants would be projected to receive a total of $540,000 during the Plan term, consisting of the $180,000 allocated to Class 4 and the projected $360,000 in Class 3 Plan Payments.  This would result in a total distribution of approximately 21%.

*c.* **Treatment**

Mr. Bakhramov will retain his interest in the Debtor post-confirmation.

**VI.    MEANS OF EFFECTUATING THIS PLAN AND IMPLEMENTATION OF THIS PLAN**

**A.    Funding for This Plan**

This Plan will be funded by a combination of:

(1) the Debtor's cash on hand on the Effective Date, estimated to total $50,000;

(2) as to the Class 3 Settling Guaranty Claims only, a contribution from Mr. Bakhramov in the amount of $100,000; and

(3) the Debtor's projected disposable income (as defined in section 1191(d) of the Bankruptcy Code) in the three-year period beginning on the date that the first payment is due under this Plan, as such amounts are set forth in the Projections.

**B.    The Effective Date**

The effective date (the "Effective Date") of the Plan shall be the first day after the Court enters an order confirming the Plan and all of the following conditions have been satisfied or waived as specified below: (1) all documents, instruments, and agreements to be executed in connection with the Plan shall have been executed and delivered by all parties to such documents, instructions, and agreements; (2) 14 days following the entry of the plan confirmation order shall have passed without an appeal of said order having been filed; (3) the Plan is not subject to an appeal or rehearing; and (4) there is no stay in effect with respect to the Plan confirmation order.  Conditions numbered (1) and (3) above can be waived by the Debtor in its sole discretion. Condition number (2) above can be waived by request of the Debtor with an order by the Bankruptcy Court pursuant to Bankruptcy Rule 3020(e).  Condition number (4) cannot be waived.

**C.    The Reorganized Debtor**

Upon the occurrence of the Effective Date, the Debtor shall be known as the "Reorganized Debtor."  The management of the Reorganized Debtor will remain the same as the Debtor.

**D.    Disbursing Agent**

Irrespective of whether the Plan is confirmed consensually pursuant to section 1191(a) of

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

the Bankruptcy Code or nonconsensually pursuant to section 1191(b) of the Bankruptcy Code, the Reorganized Debtor, or its nominee, will act as the "Disbursing Agent" under this Plan for the purpose of making all distributions to all classes provided for under the Plan.  The Reorganized Debtor will not be compensated for any its services as Disbursing Agent under this Plan.

**E.**    **Distributions**

Distributions to be made under the Plan shall commence after the Effective Date and shall be made by check drawn on a domestic bank, by wire transfer, or by automated clearing house (ACH) at the sole election of the Disbursing Agent.  Except as otherwise agreed upon by the Disbursing Agent in writing, distributions may be delivered to creditors by regular mail to the addressee shown in (1) the Debtor's Schedules (as may have been amended); or (2) the address is stated in a duly filed Proof of Claim.  Nothing contained in the Plan shall require the Disbursing Agent or the Reorganized Debtor to attempt to locate any holder of an allowed claim.

Checks issued by the Disbursing Agent to pay allowed claims shall be null and void if not negotiated within 90 days after the date of issuance thereof.  Requests for reissuance of any check shall be made to the applicable Disbursing Agent or the Reorganized Debtor by the creditor to whom such check originally was issued, within 90-days after the original date of issuance. After the expiration of the 90-day period, the Disbursing Agent is authorized to void the check and any unclaimed funds shall be revested in the Reorganized Debtor, free of any restrictions thereon, and any entitlement of any holder of any claim to such distribution shall be extinguished and forever barred.

**VII.**    **EFFECT OF CONFIRMATION OF THIS PLAN**

As provided in Section 1141 of the Bankruptcy Code, confirmation of the Plan will result in the following:

**A.**    **Binding Effect**

As set forth in section 1141(a) of the Bankruptcy Code, upon entry of the Confirmation Order, the provisions of the Plan bind the Debtor, each creditor and each holder of equity in the Debtor that is impaired under the Plan.  The rights and obligations of any person or entity governed by the Plan will be binding upon, and inure to the benefit of, the successors or assigns of such

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1   person or entity.

2   **B.**   **Revesting of Property**

3   Except as provided elsewhere in the Plan or order confirming the Plan, on the Effective

4   Date, each of the following shall occur: (i) all of the property of the estate is to be revested in the

5   Reorganized Debtor; (ii) all of the claims against and interests in third parties that constitute

6   property of the estate is to be revested in the Reorganized Debtor; (iii) the Reorganized Debtor shall

7   have absolute authority to prosecute, waive, adjust or settle any claims without the need for

8   approval by the Bankruptcy Court; and (iv) the Reorganized Debtor shall have the authority to

9   employ such professionals as it deems necessary to prosecute or defend such claims asserted

10   without the need for approval by the Bankruptcy Court.

11   **C.**   **Free and Clear**

12   As set forth in section 1141(c), except as provided in the Plan or in the order confirming the

13   Plan, after the Effective Date, the property dealt with by this Plan is free and clear of all claims and

14   interests of creditors.

15   **D.**   **Discharge**

16   If (i) confirmation of the Plan is consensual, then on the Effective Date, and (ii) if the

17   confirmation is not consensual, then after the completion of required payments under the Plan, the

18   Debtor and the Reorganized Debtor, to the fullest extent permitted by sections 1141 and 1192 of

19   the Bankruptcy Code, shall be deemed discharged and released from all claims and interests

20   including, without limitation, demands, liabilities, claims, and interests that arose before the

21   Effective Date and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the

22   Bankruptcy Code regardless of whether: (1) a proof of claim or proof of interest based on such debt

23   or interest is filed or deemed filed; (2) a claim or interest based on such a debt or interest is allowable

24   under section 502 of the Bankruptcy Code; or (3) the person or entity holding the claim or interest

25   based on such debt or interest has voted to accept the Plan.

26   Upon such discharge, all claims shall be forever satisfied, discharged and released in full,

27   and all holders of claims and interests shall be forever precluded from asserting claims or interests

28   against the Debtor, the Reorganized Debtor, and their property and assets.  Any litigation pending

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1    prepetition and/or initiated postpetition against the Debtor or its property or assets in any court,

2    other than the Court where relief from stay was not obtained from, shall be deemed discharged

3    upon the occurrence of the Effective Date.

4           **E.**    **Exculpations and Releases, and Limitation of Liability**

5           **To the maximum extent permitted by law, neither the Debtor, the Reorganized**

6    **Debtor, nor any of the professionals employed or retained by them in connection with this**

7    **bankruptcy case, shall have or incur liability to any person or entity for any act taken or**

8    **omission in connection with, relating to or arising out of the Debtor's chapter 11 case, the**

9    **formulation, negotiation, implementation, confirmation or consummation of this Plan, or any**

10    **contract, instrument, release or other agreement or document entered into during the chapter**

11    **11 case or otherwise created in connection with this Plan; provided, however, that nothing in**

12    **this provision shall be construed to limit liability for gross negligence or intentional**

13    **misconduct.**

14           **F.**    **Injunctions**

15           **The order confirming this Plan shall enjoin the prosecution, whether directly,**

16    **derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt,**

17    **right, cause of action, liability or interest released, discharged or terminated pursuant to this**

18    **Plan.  Except as provided in this Plan or the order confirming this Plan, as of the Effective**

19    **Date, all entities that have held, currently hold or may hold a claim or other debt or liability**

20    **that is discharged or an interest or other right that is extinguished pursuant to the terms of**

21    **this Plan are permanently enjoined from taking any of the following actions against the**

22    **Debtor, the Reorganized Debtor, or its property on account of any such discharged claims,**

23    **debts or liabilities or extinguished interests or rights: (i) commencing or continuing, in any**

24    **manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting**

25    **or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting**

26    **or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or**

27    **recoupment of any kind against any debt, liability or obligation due to the Debtor or**

28    **Reorganized Debtor; and (v) commencing or continuing any action in any manner, in any**

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

**place, that does not comply with or is inconsistent with the provisions of this Plan. By accepting a distribution pursuant to this Plan, each holder of an allowed claim receiving distributions pursuant to this Plan shall be deemed to have specifically consented to the injunctions set forth in this Section. The injunction described in this paragraph (the "Injunction") is applicable to all creditors and parties in interest with respect to claims or causes of action arising or existing prior to the Effective Date.**

**All creditors and parties in interest who are presented with a copy of the Plan and order confirming the Plan are charged with actual knowledge of the Injunction and with actual knowledge that the Injunction is applicable to said creditor and/or party in interest ("Actual Knowledge"), such that it is impossible for said creditor and/or party in interest to have a good faith belief that the Injunction does not apply to said creditor's and/or party in interest's claim or cause of action. Accordingly, any creditor and/or party in interest charged with such Actual Knowledge may be held in contempt for violating the Injunction, which contempt proceeding shall include the Reorganized Debtor's reasonable attorneys' fees and costs for enforcing the Injunction.**

### G.    Executory Contracts and Unexpired Leases

On the Effective Date, all of the Debtor's executory contracts and unexpired leases which have not previously been assumed or rejected by the Debtor shall be deemed to be assumed by the Reorganized Debtor pursuant to section 365 of the Bankruptcy Code and to become valid and binding executory contracts and unexpired leases of the Reorganized Debtor. Any counterparty objecting to the foregoing assumption, or asserting that arrearages exist, must file and serve their objection no later than the deadline for objecting to this Plan. Failure to timely object will act as a waiver of any objection to assumption and a waiver of any right to assert any arrearage under the applicable executory contract or unexpired lease.

### H.    Exemption from Transfer Taxes

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of the Bankruptcy Code, may not be taxed under any law imposing a stamp tax or

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

17

SUBCHAPTER V PLAN OF
REORGANIZATION

1   similar tax.  Transfers under the Plan that are exempt from taxes under section 1146(c) of the

2   Bankruptcy Code include all transfers by the Debtor after the commencement of the bankruptcy

3   case in contemplation of the Plan but prior to the Effective Date.  The taxes from which such

4   transfers are exempt include stamp taxes, recording taxes, sales and use taxes, transfer taxes, and

5   other similar taxes.

6           **I.      Administrative Claim Bar Date**

7           Any party asserting an administrative claim, other than the claims of estate professionals or

8   administrative claims arising in the ordinary course, must file a request for payment of such

9   administrative claim with the Court no later than 30 days following the Effective Date, or be forever

10  barred from asserting or receiving any distribution on an administrative claim against the Debtor

11  or the Reorganized Debtor.

12  **VIII.   MISCELLANEOUS PROVISIONS**

13          **A.      Disputed Claims**

14          A "Disputed Claim" is any claim as to which: (i) the Debtor has identified as "contingent",

15  "unliquidated" or "disputed" in its schedules; (ii) the Debtor has filed an objection to prior to the

16  Effective Date; or (ii) the Reorganized Debtor has identified as being subject to objection, in full

17  or in part.  No distributions will be made by the Disbursing Agent on any portion of a Disputed

18  Claim until such time as an order entered by the Court allowing the Disputed Claim, or any portion

19  thereof, becomes final and nonappealable.

20          The Debtor or the Reorganized Debtor may, at any time, request that the Court estimate any

21  Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor

22  or the Reorganized Debtor previously objected to such claim or whether the Court has ruled on any

23  such objection, and the Court will retain jurisdiction to estimate any claim at any time during

24  litigation concerning any objection to any claim, including during the pendency of any appeal

25  relating to any such objection.

26          **B.      Modifications of the Plan**

27          If the Plan has been confirmed consensually pursuant to section 1191(a) of the Bankruptcy

28  Code, the Debtor may modify the Plan at any time after confirmation of the Plan and before

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

1  substantial consummation of the Plan but may not modify the Plan so that the Plan as modified fails

2  to meet the requirements of sections 1122 and 1123 of the Bankruptcy Code, with the exception of

3  subsection (a)(8) of section 1123.

4  If the Plan has been confirmed nonconsensually pursuant to section 1191(b), the Debtor

5  may modify the Plan at any time during the three-year Plan term, but may not modify the Plan so

6  that the Plan as modified fails to meet the requirements of section 1191(b).

7  ### C.    Post-Confirmation Status Reports

8  Until entry of a final decree in the Debtor's chapter 11 case, the Reorganized Debtor shall

9  file a quarterly status report with the Court explaining what progress has been made toward

10  substantial consummation of the confirmed Plan and payment of the plan payments set forth in the

11  Projections.

12  ### D.    Default Provisions and Post-Confirmation Conversion/ Dismissal

13  To the extent that the Debtor or the Reorganized Debtor, as the case may be, does not

14  comply with the terms of this Plan, creditors will be entitled to seek enforcement in the Bankruptcy

15  Court of this Plan and payment of their allowed claims pursuant to the terms of this Plan.  If the

16  Court orders the Debtor's chapter 11 case converted to chapter 7 after this Plan is confirmed, then

17  all property that had been property of the chapter 11 estate, and that has not been disbursed pursuant

18  to this Plan, will revest in the chapter 7 estate, and the automatic stay will be reimposed upon the

19  revested property, but only to the extent that relief from stay was not previously authorized by the

20  Court during this case.  The Plan Confirmation Order may also be revoked under very limited

21  circumstances.  The Court may revoke the Plan Confirmation Order if it was procured by fraud and

22  if a party in interest brings an adversary proceeding to revoke confirmation within 180 days after

23  the entry of the Plan Confirmation Order.

24  ### E.    Tax Consequences

25  The following disclosure of possible tax consequences is intended solely for the purpose of

26  alerting readers about possible tax issues this Plan may present to the Debtor: The Debtor

27  anticipates that confirmation of the Plan will not have any tax consequences for the following

28  reasons:

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of the Bankruptcy Code, may not be taxed under any law imposing a stamp tax or similar tax.  Transfers under this Plan that are exempt from taxes under section 1146 of the Bankruptcy Code include all transfers by the Debtor after the commencement of his bankruptcy case in contemplation of this Plan but prior to the Effective Date.  The taxes from which such transfers are exempt include stamp taxes, recording taxes, sales and use taxes, transfer taxes, and other similar taxes.

Further, the Debtor will continue to stay current with filing deadlines and corresponding payment obligations to all taxing agencies.

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.

The Debtor CANNOT and DOES NOT represent that the tax consequences contained herein are the only tax consequences of the Plan because the Tax Code embodies many complicated rules that make it difficult to state completely and accurately all the tax implications of any action.

**F.**    **Risk Factors**

The Debtor's ability to perform its obligations under this Plan is subject to various factors and contingencies, some of which are described herein.  This discussion is intended to provide a brief overview of certain factors and contingencies and does not exhaustively discuss any potential factors and contingencies.  Moreover, this section should be read in conjunction with all other sections of this Plan.

**1.**    **Failure to Secure Confirmation**

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan, and requires the Court to make a series of specified, independent findings.  While the Debtor believes that this Plan complies with, or will comply with all such requirements, there can be no guarantee that the Court will reach the same conclusion.  If this Plan is not confirmed, it is unclear what distributions, if any, will be made to holders of claims.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067

### 2.   Modification of the Plan

This Plan may be amended or modified as necessary to secure confirmation.  Any such modifications could result in a less favorable treatment of any non-accepting class.  Such less favorable treatment could include a distribution to the class affected by the modification of a lesser value than currently provided in this Plan or possibly no distribution whatsoever.

### 3.   The Debtor May Not Meet the Projections

As addressed above, underlying the Projections are a number of estimates and assumptions that, although developed and considered reasonable by the Debtor, are inherently subject to economic, business and competitive uncertainties and contingencies beyond the Debtor's control. Specifically, the Projections are based, in part, on the Debtor's historical sales through online portals such as Amazon – a market which is difficult to predict and has shown recent volatility.  In addition, the Debtor is unable to forecast the full effect the filing of the chapter 11 case will have on the Debtor's brand and customer base.  Accordingly, there can be no assurance that the revenue figures projected in the Projections will be met.

### G.   <u>Final Decree</u>

Once the bankruptcy estate has been deemed fully administered pursuant to Bankruptcy Rule 3022, the Reorganized Debtor will file a motion with the Court to obtain a final decree to close the Debtor's chapter 11 case.

DATED:  June 11, 2024                    GREENBERG GLUSKER FIELDS CLAMAN &
                                         MACHTINGER LLP


                                         By: */s/Keith Patrick Banner*
                                         _____
                                             BRIAN L. DAVIDOFF (SBN 102654)
                                             KEITH PATRICK BANNER (SBN 259502)
                                             COLE F. NICHOLAS (SBN 354027)
                                             Attorneys for Debtor and Debtor-in-Possession
                                             MARCHEY GROUP, INC.

# EXHIBIT 1

Exhibit 1 Page 0022

# MARCHEY GROUP INC
## Liquidation Analysis

| | As of 05/31/2024 | Percentage Collected Liquidation | Cash to Estate |
|---|---|---|---|
| **Assets:** | | | |
| **Bank Accounts** | 32,765 | 100% | 32,765 |
| **Accounts Receivable (Net of Allowance)** | 146,686 | 100% | 146,686 |
| **Inventory Assets** | 110,615 | 10% | 11,062 |
| **Net Fixed Assets** | 49,857 | 3% | 1,496 |
| **Total Cash Liquidated** | 339,923 | | 192,008 |
| | | | |
| **Chapter 7 Administrative Expenses:** | | | |
| **Trustee Fees** | | | 12,850 |
| **Legal Fees** | | | 25,000 |
| **Accounting Fees** | | | 5,000 |
| **Total Chapter 7 Administrative Expenses** | | | 42,850 |
| | | | |
| **Net Available for Chapter 11 & Prepetition Creditors** | | | 149,158 |
| | | | |
| **Chapter 11 Administrative Creditors:** | | | |
| **Legal, Accounting, Trustee** | | | 70,000 |
| **Accounts Payable** | | | 280,797 |
| **Other** | | | 0 |
| **Total Chapter 11 Administrative Creditors** | | | 350,797 |
| | | | |
| **Net Available for Prepetiton Creditors** | | | -201,639 |
| | | | |
| Total Unsecured Claims | | | 2,515,739 |
| | | | |
| Amount paid to Unsecured Claims - Chapter 7 | | | 0 |
| ***Percentage Payout to Unsecured Claims - Chapter 7 Liquidation*** | | | ***0.00%*** |
| | | | |
| Maximum Amount paid to Unsecured Claims - Chapter 11 Plan [1] | | | 540,000 |
| ***Maximum Percentage Payout to Unsecured Claims - Chapter 11 Plan*** | | | ***21.46%*** |

[1] Amount paid to Class 4 General Unsecured Creditors under the Plan varies from appox. $180,000 to $540,000 depending upon how many unsecured creditors qualify for, and elect into the Class 3 Settling Guaranty Claims

Exhibit 1 Page 0023

# EXHIBIT 2

Exhibit 2 Page 0024

# MARCHEY GROUP INC

## 36-MONTHS PROJECTION

| | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 |
|---|---|---|---|---|---|---|
| | August, 2024 | September, 2024 | October, 2024 | November, 2024 | December, 2024 | January, 2025 |
| **Beginning Cash Balance** | $ 50,000 | $ 937 | $ 952 | $ 1,123 | $ 1,016 | $ 1,876 |
| **Cash Receipts** | | | | | | |
| Receipts | | | | | | |
| Merchandise Sales | $ 595,356 | $ 628,553 | $ 629,816 | $ 627,557 | $ 532,275 | $ 525,065 |
| AMZ eBay Marketpalce Fees | $ (104,187) | $ (109,997) | $ (110,218) | $ (109,822) | $ (93,148) | (91,886) |
| AMZ eBay Marketpalce Taxes | $ (36,674) | $ (38,719) | $ (38,797) | $ (38,658) | $ (32,788) | (32,344) |
| Returns/Refunds | $ (71,443) | $ (75,426) | $ (75,578) | $ (75,307) | $ (63,873) | (63,008) |
| Returns/Refunds COG Recover | $ 35,721 | $ 37,713 | $ 37,789 | $ 37,653 | $ 31,937 | 31,504 |
| Sublet Rental Payments | $ 6,500 | $ 6,500 | $ 6,500 | $ 6,500 | $ 6,500 | 6,500 |
| **Total Receipts** | $ 425,273 | $ 448,624 | $ 449,513 | $ 447,924 | $ 380,902 | $ 375,830 |
| AMZ Lending Loan Repayments | $ (12,672) | $ (12,672) | $ (12,672) | $ (12,672) | $ - | $ - |
| COG Purchases - Resale Items | $ (306,906) | $ (324,019) | $ (324,670) | $ (323,506) | $ (274,388) | (270,671) |
| **Net Cash Receipts** | $ 105,695 | $ 111,933 | $ 112,170 | $ 111,745 | $ 106,515 | $ 105,160 |
| **Cash Disbursements** | | | | | | |
| Operating Expense | $ (5,697) | $ (5,791) | $ (5,795) | $ (5,789) | $ (5,517) | (5,496) |
| Payroll Expenses (non-insider) | $ (16,800) | $ (16,800) | $ (16,800) | $ (16,800) | $ (16,800) | (16,800) |
| Independent Contractor | $ (2,000) | $ (2,000) | $ (2,000) | $ (2,000) | $ (2,000) | (2,000) |
| Bakhramov Salary (Reduced by $5,000) | $ (15,000) | $ (15,000) | $ (15,000) | $ (15,000) | $ (15,000) | (15,000) |
| Postage and Delivery | $ (34,828) | $ (36,770) | $ (36,844) | $ (36,712) | $ (31,138) | (34,129) |
| Occupancy Expenses | $ (13,230) | $ (13,230) | $ (13,230) | $ (13,230) | $ (13,230) | (13,230) |
| Shipping Supplies | $ (2,203) | $ (2,326) | $ (2,330) | $ (2,322) | $ (1,969) | (1,943) |
| Secured Lender Payments | $ - | $ - | $ - | $ - | $ - | - |
| **Total Cash Disbursements** | $ (89,758) | $ (91,917) | $ (92,000) | $ (91,853) | $ (85,654) | (88,598) |
| **Net Cash Flow** | $ 15,937 | $ 20,015 | $ 20,170 | $ 19,893 | $ 20,860 | 16,561 |
| Greenberg (admin) | $ (30,000) | $ (5,000) | $ (5,000) | $ (5,000) | $ (5,000) | |
| Subchapter V Trustee (admin) | $ (20,000) | | | | | |
| General unsecured claims "Release" | $ (10,000) | $ (10,000) | $ (10,000) | $ (10,000) | $ (10,000) | (10,000) |
| General unsecured claims "No Release" | $ (5,000) | $ (5,000) | $ (5,000) | $ (5,000) | $ (5,000) | (5,000) |
| **Total Plan Payments** | $ (65,000) | $ (20,000) | $ (20,000) | $ (20,000) | $ (20,000) | (15,000) |
| **Ending Cash Balance (Reserve)** | $ 937 | $ 952 | $ 1,123 | $ 1,016 | $ 1,876 | 3,437 |

Exhibit 2 Page 0025

# MARCHEY GROUP INC

## 36-MONTHS PROJECTION

| | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 |
|---|---|---|---|---|---|---|
| | February, 2025 | March, 2025 | April, 2025 | May, 2025 | June, 2025 | July, 2025 |
| Beginning Cash Balance | $ 3,437 | $ 4,022 | $ 6,688 | $ 1,799 | $ 3,151 | $ 3,939 |
| **Cash Receipts** | | | | | | |
| Receipts | | | | | | |
| Merchandise Sales | $ 516,677 | $ 534,561 | $ 527,211 | $ 528,950 | $ 524,103 | 523,241 |
| AMZ eBay Marketpalce Fees | $ (90,418) | $ (93,548) | $ (92,262) | $ (92,566) | $ (91,718) | (91,567) |
| AMZ eBay Marketpalce Taxes | $ (31,827) | $ (32,929) | $ (32,476) | $ (32,583) | $ (32,285) | (32,232) |
| Returns/Refunds | $ (62,001) | $ (64,147) | $ (63,265) | $ (63,474) | $ (62,892) | (62,789) |
| Returns/Refunds COG Recover | $ 31,001 | $ 32,074 | $ 31,633 | $ 31,737 | $ 31,446 | 31,394 |
| Sublet Rental Payments | $ 6,500 | $ 6,500 | $ 6,500 | $ 6,500 | $ 6,500 | 6,500 |
| **Total Receipts** | $ 369,931 | $ 382,510 | $ 377,340 | $ 378,563 | $ 375,154 | 374,548 |
| AMZ Lending Loan Repayments | $ - | $ - | $ - | $ - | $ - | - |
| COG Purchases - Resale Items | $ (266,347) | $ (275,566) | $ (271,777) | $ (272,674) | $ (270,175) | (269,731) |
| **Net Cash Receipts** | $ 103,584 | $ 106,944 | $ 105,563 | $ 105,890 | $ 104,979 | 104,817 |
| **Cash Disbursements** | | | | | | |
| Operating Expense | $ (5,473) | $ (5,523) | $ (12,203) | $ (5,508) | $ (5,494) | (5,491) |
| Payroll Expenses (non-insider) | $ (16,800) | $ (16,800) | $ (16,800) | $ (16,800) | $ (16,800) | (16,800) |
| Independent Contractor | $ (2,000) | $ (2,000) | $ (2,000) | $ (2,000) | $ (2,000) | (2,000) |
| Bakhramov Salary  (Reduced by $5,000) | $ (15,000) | $ (15,000) | $ (15,000) | $ (15,000) | $ (15,000) | (15,000) |
| Postage and Delivery | $ (33,584) | $ (34,746) | $ (34,269) | $ (34,382) | $ (34,067) | (34,011) |
| Occupancy Expenses | $ (13,230) | $ (13,230) | $ (13,230) | $ (13,892) | $ (13,892) | (13,892) |
| Shipping Supplies | $ (1,912) | $ (1,978) | $ (1,951) | $ (1,957) | $ (1,939) | (1,936) |
| Secured Lender Payments | $ - | $ - | $ - | $ - | $ - | - |
| **Total Cash Disbursements** | $ (87,998) | $ (89,278) | $ (95,452) | $ (89,538) | $ (89,191) | (89,129) |
| **Net Cash Flow** | $ 15,585 | $ 17,666 | $ 10,111 | $ 16,352 | $ 15,788 | 15,688 |
| Greenberg (admin) | | | | | | |
| Subchapter V Trustee (admin) | | | | | | |
| General unsecured claims  "Release" | $ (10,000) | $ (10,000) | $ (10,000) | $ (10,000) | $ (10,000) | (10,000) |
| General unsecured claims "No Release" | $ (5,000) | $ (5,000) | $ (5,000) | $ (5,000) | $ (5,000) | (5,000) |
| Total Plan Payments | $ (15,000) | $ (15,000) | $ (15,000) | $ (15,000) | $ (15,000) | (15,000) |
| **Ending Cash Balance (Reserve)** | $ 4,022 | $ 6,688 | $ 1,799 | $ 3,151 | $ 3,939 | 4,627 |

Exhibit 2 Page 0026

# MARCHEY GROUP INC

## 36-MONTHS PROJECTION

| | Month 13 | Month 14 | Month 15 | Month 16 | Month 17 | Month 18 |
|---|---|---|---|---|---|---|
| | **August, 2025** | **September, 2025** | **October, 2025** | **November, 2025** | **December, 2025** | **January, 2026** |
| **Beginning Cash Balance** | $ 4,627 | $ 6,480 | $ 6,504 | $ 6,088 | $ 6,864 | $ 4,180 |
| **Cash Receipts** | | | | | | |
| **Receipts** | | | | | | |
| Merchandise Sales | $ 547,697 | $ 531,981 | $ 528,192 | $ 538,439 | $ 508,706 | 550,109 |
| AMZ eBay Marketpalce Fees | $ (95,847) | $ (93,097) | $ (92,434) | $ (94,227) | $ (89,024) | (96,269) |
| AMZ eBay Marketpalce Taxes | $ (33,738) | $ (32,770) | $ (32,537) | $ (33,168) | $ (31,336) | (33,887) |
| Returns/Refunds | $ (65,724) | $ (63,838) | $ (63,383) | $ (64,613) | $ (61,045) | (66,013) |
| Returns/Refunds COG Recover | $ 32,862 | $ 31,919 | $ 31,691 | $ 32,306 | $ 30,522 | 33,007 |
| Sublet Rental Payments | $ 6,500 | $ 6,500 | $ 6,500 | $ 6,500 | $ 6,500 | 6,500 |
| **Total Receipts** | $ 391,750 | $ 380,696 | $ 378,030 | $ 385,238 | $ 364,324 | 393,447 |
| AMZ Lending Loan Repayments | $ - | $ - | $ - | $ - | $ - | - |
| COG Purchases - Resale Items | $ (282,338) | $ (274,236) | $ (272,283) | $ (277,565) | $ (262,238) | (283,581) |
| **Net Cash Receipts** | $ 109,412 | $ 106,459 | $ 105,747 | $ 107,673 | $ 102,086 | 109,866 |
| **Cash Disbursements** | | | | | | |
| Operating Expense | $ (5,561) | $ (5,516) | $ (5,505) | $ (5,535) | $ (5,450) | (5,568) |
| Payroll Expenses (non-insider) | $ (18,480) | $ (18,480) | $ (18,480) | $ (18,480) | $ (18,480) | (18,480) |
| Independent Contractor | $ (2,000) | $ (2,000) | $ (2,000) | $ (2,000) | $ (2,000) | (2,000) |
| Bakhramov Salary (Reduced by $5,000) | $ (15,000) | $ (15,000) | $ (15,000) | $ (15,000) | $ (15,000) | (15,000) |
| Postage and Delivery | $ (35,600) | $ (34,579) | $ (34,332) | $ (34,999) | $ (33,066) | (35,757) |
| Occupancy Expenses | $ (13,892) | $ (13,892) | $ (13,892) | $ (13,892) | $ (13,892) | (13,892) |
| Shipping Supplies | $ (2,026) | $ (1,968) | $ (1,954) | $ (1,992) | $ (1,882) | (2,035) |
| Secured Lender Payments | $ - | $ - | $ - | $ - | $ - | - |
| **Total Cash Disbursements** | $ (92,559) | $ (91,435) | $ (91,164) | $ (91,897) | $ (89,769) | (92,732) |
| **Net Cash Flow** | $ 16,853 | $ 15,025 | $ 14,584 | $ 15,776 | $ 12,316 | 17,134 |
| Greenberg (admin) | | | | | | |
| Subchapter V Trustee (admin) | | | | | | |
| General unsecured claims "Release" | $ (10,000) | $ (10,000) | $ (10,000) | $ (10,000) | $ (10,000) | (10,000) |
| General unsecured claims "No Release" | $ (5,000) | $ (5,000) | $ (5,000) | $ (5,000) | $ (5,000) | (5,000) |
| **Total Plan Payments** | $ (15,000) | $ (15,000) | $ (15,000) | $ (15,000) | $ (15,000) | (15,000) |
| **Ending Cash Balance (Reserve)** | $ 6,480 | $ 6,504 | $ 6,088 | $ 6,864 | $ 4,180 | 6,314 |

Exhibit 2 Page 0027

# MARCHEY GROUP INC

## 36-MONTHS PROJECTION

| | Month 19 | Month 20 | Month 21 | Month 22 | Month 23 | Month 24 |
|---|---|---|---|---|---|---|
| | February, 2026 | March, 2026 | April, 2026 | May, 2026 | June, 2026 | July, 2026 |
| **Beginning Cash Balance** | $ 6,314 | $ 6,503 | $ 8,902 | $ 2,579 | $ 2,970 | $ 4,077 |
| **Cash Receipts** | | | | | | |
| Receipts | | | | | | |
| Merchandise Sales | $ 533,395 | $ 552,390 | $ 535,014 | $ 544,684 | $ 550,833 | $ 554,752 |
| AMZ eBay Marketpalce Fees | $ (93,344) | $ (96,668) | $ (93,628) | $ (95,320) | $ (96,396) | $ (97,082) |
| AMZ eBay Marketpalce Taxes | $ (32,857) | $ (34,027) | $ (32,957) | $ (33,553) | $ (33,931) | $ (34,173) |
| Returns/Refunds | $ (64,007) | $ (66,287) | $ (64,202) | $ (65,362) | $ (66,100) | $ (66,570) |
| Returns/Refunds COG Recover | $ 32,004 | $ 33,143 | $ 32,101 | $ 32,681 | $ 33,050 | 33,285 |
| Sublet Rental Payments | $ 6,500 | $ 6,500 | $ 6,500 | $ 6,500 | $ 6,500 | 6,500 |
| **Total Receipts** | $ 381,690 | $ 395,051 | $ 382,829 | $ 389,631 | $ 393,956 | 396,713 |
| AMZ Lending Loan Repayments | $ - | $ - | $ - | $ - | $ - | - |
| COG Purchases - Resale Items | $ (274,965) | $ (284,757) | $ (275,800) | $ (280,784) | $ (283,954) | (285,975) |
| **Net Cash Receipts** | $ 106,725 | $ 110,294 | $ 107,029 | $ 108,846 | $ 110,001 | 110,738 |
| **Cash Disbursements** | | | | | | |
| Operating Expense | $ (5,520) | $ (5,574) | $ (12,225) | $ (5,552) | $ (5,570) | (5,581) |
| Payroll Expenses (non-insider) | $ (18,480) | $ (18,480) | $ (18,480) | $ (18,480) | $ (18,480) | (18,480) |
| Independent Contractor | $ (2,000) | $ (2,000) | $ (2,000) | $ (2,000) | $ (2,000) | (2,000) |
| Bakhramov Salary (Reduced by $5,000) | $ (15,000) | $ (15,000) | $ (15,000) | $ (15,000) | $ (15,000) | (15,000) |
| Postage and Delivery | $ (34,671) | $ (35,905) | $ (34,776) | $ (35,404) | $ (35,804) | (36,059) |
| Occupancy Expenses | $ (13,892) | $ (13,892) | $ (13,892) | $ (15,003) | $ (15,003) | (15,003) |
| Shipping Supplies | $ (1,974) | $ (2,044) | $ (1,980) | $ (2,015) | $ (2,038) | (2,053) |
| Secured Lender Payments | $ - | $ - | $ - | $ - | $ - | - |
| **Total Cash Disbursements** | $ (91,536) | $ (92,895) | $ (98,352) | $ (93,455) | $ (93,895) | (94,175) |
| **Net Cash Flow** | $ 15,189 | $ 17,399 | $ 8,677 | $ 15,391 | $ 16,107 | 16,563 |
| Greenberg (admin) | | | | | | |
| Subchapter V Trustee (admin) | | | | | | |
| General unsecured claims "Release" | $ (10,000) | $ (10,000) | $ (10,000) | $ (10,000) | $ (10,000) | (10,000) |
| General unsecured claims "No Release" | $ (5,000) | $ (5,000) | $ (5,000) | $ (5,000) | $ (5,000) | (5,000) |
| **Total Plan Payments** | $ (15,000) | $ (15,000) | $ (15,000) | $ (15,000) | $ (15,000) | (15,000) |
| **Ending Cash Balance (Reserve)** | $ 6,503 | $ 8,902 | $ 2,579 | $ 2,970 | $ 4,077 | 5,640 |

Exhibit 2 Page 0028

# MARCHEY GROUP INC

## 36-MONTHS PROJECTION

| | Month 25 | Month 26 | Month 27 | Month 28 | Month 29 | Month 30 |
|---|---|---|---|---|---|---|
| | August, 2026 | September, 2026 | October, 2026 | November, 2026 | December, 2026 | January, 2027 |
| **Beginning Cash Balance** | $ 5,640 | $ 7,634 | $ 7,962 | $ 8,098 | $ 8,798 | $ 5,936 |
| **Cash Receipts** | | | | | | |
| Receipts | | | | | | |
| Merchandise Sales | $ 565,681 | $ 551,366 | $ 549,709 | $ 554,559 | $ 523,936 | $ 551,579 |
| AMZ eBay Marketpalce Fees | $ (98,994) | $ (96,489) | $ (96,199) | $ (97,048) | $ (91,689) | $ (96,526) |
| AMZ eBay Marketpalce Taxes | $ (34,846) | $ (33,964) | $ (33,862) | $ (34,161) | $ (32,274) | $ (33,977) |
| Returns/Refunds | $ (67,882) | $ (66,164) | $ (65,965) | $ (66,547) | $ (62,872) | $ (66,189) |
| Returns/Refunds COG Recover | $ 33,941 | $ 33,082 | $ 32,983 | $ 33,274 | $ 31,436 | $ 33,095 |
| Sublet Rental Payments | $ 6,500 | $ 6,500 | $ 6,500 | $ 6,500 | $ 6,500 | $ 6,500 |
| **Total Receipts** | $ 404,400 | $ 394,331 | $ 393,166 | $ 396,577 | $ 375,037 | $ 394,481 |
| AMZ Lending Loan Repayments | $ - | $ - | $ - | $ - | $ - | $ - |
| COG Purchases - Resale Items | $ (291,609) | $ (284,229) | $ (283,375) | $ (285,875) | $ (270,089) | $ (284,339) |
| **Net Cash Receipts** | $ 112,791 | $ 110,102 | $ 109,790 | $ 110,702 | $ 104,948 | $ 110,142 |
| **Cash Disbursements** | | | | | | |
| Operating Expense | $ (5,612) | $ (5,571) | $ (5,567) | $ (5,580) | $ (5,493) | $ (5,572) |
| Payroll Expenses (non-insider) | $ (19,320) | $ (19,320) | $ (19,320) | $ (19,320) | $ (19,320) | $ (19,320) |
| Independent Contractor | $ (2,000) | $ (2,000) | $ (2,000) | $ (2,000) | $ (2,000) | $ (2,000) |
| Bakhramov Salary  (Reduced by $5,000) | $ (15,000) | $ (15,000) | $ (15,000) | $ (15,000) | $ (15,000) | $ (15,000) |
| Postage and Delivery | $ (36,769) | $ (35,839) | $ (35,731) | $ (36,046) | $ (34,056) | $ (35,853) |
| Occupancy Expenses | $ (15,003) | $ (15,003) | $ (15,003) | $ (15,003) | $ (15,003) | $ (15,003) |
| Shipping Supplies | $ (2,093) | $ (2,040) | $ (2,034) | $ (2,052) | $ (1,939) | $ (2,041) |
| Secured Lender Payments | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Cash Disbursements** | $ (95,797) | $ (94,773) | $ (94,655) | $ (95,002) | $ (92,810) | $ (94,788) |
| **Net Cash Flow** | $ 16,994 | $ 15,329 | $ 15,136 | $ 15,700 | $ 12,137 | $ 15,353 |
| Greenberg (admin) | | | | | | |
| Subchapter V Trustee (admin) | | | | | | |
| General unsecured claims  "Release" | $ (10,000) | $ (10,000) | $ (10,000) | $ (10,000) | $ (10,000) | $ (10,000) |
| General unsecured claims "No Release" | $ (5,000) | $ (5,000) | $ (5,000) | $ (5,000) | $ (5,000) | $ (5,000) |
| **Total Plan Payments** | $ (15,000) | $ (15,000) | $ (15,000) | $ (15,000) | $ (15,000) | $ (15,000) |
| **Ending Cash Balance (Reserve)** | $ 7,634 | $ 7,962 | $ 8,098 | $ 8,798 | $ 5,936 | $ 6,289 |

Exhibit 2 Page 0029

# MARCHEY GROUP INC

## 36-MONTHS PROJECTION

| | Month 31 | Month 32 | Month 33 | Month 34 | Month 35 | Month 36 |
|---|---|---|---|---|---|---|
| | February, 2027 | March, 2027 | April, 2027 | May, 2027 | June, 2027 | July, 2027 |
| Beginning Cash Balance | $ 6,289 | $ 6,553 | $ 7,355 | $ 1,169 | $ 2,166 | $ 3,012 |
| **Cash Receipts** | | | | | | |
| Receipts | | | | | | |
| Merchandise Sales | $ 550,815 | $ 555,431 | $ 552,959 | $ 563,556 | $ 562,265 | $ 570,723 |
| AMZ eBay Marketpalce Fees | $ (96,393) | (97,200) | (96,768) | (98,622) | (98,396) | (99,876) |
| AMZ eBay Marketpalce Taxes | $ (33,930) | (34,215) | (34,062) | (34,715) | (34,636) | (35,157) |
| Returns/Refunds | $ (66,098) | (66,652) | (66,355) | (67,627) | (67,472) | (68,487) |
| Returns/Refunds COG Recover | $ 33,049 | 33,326 | 33,178 | 33,813 | 33,736 | 34,243 |
| Sublet Rental Payments | $ 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 |
| **Total Receipts** | $ 393,943 | $ 397,190 | $ 395,451 | $ 402,906 | $ 401,997 | $ 407,946 |
| AMZ Lending Loan Repayments | $ - | $ - | $ - | $ - | $ - | $ - |
| COG Purchases - Resale Items | $ (283,945) | (286,324) | (285,050) | (290,513) | (289,847) | (294,207) |
| **Net Cash Receipts** | $ 109,998 | $ 110,865 | $ 110,401 | $ 112,392 | $ 112,150 | $ 113,739 |
| **Cash Disbursements** | | | | | | |
| Operating Expense | $ (5,570) | (5,583) | (12,276) | (5,606) | (5,602) | (5,627) |
| Payroll Expenses (non-insider) | $ (19,320) | (19,320) | (19,320) | (19,320) | (19,320) | (19,320) |
| Independent Contractor | $ (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) |
| Bakhramov Salary  (Reduced by $5,000) | $ (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) |
| Postage and Delivery | $ (35,803) | (36,103) | (35,942) | (36,631) | (36,547) | (37,097) |
| Occupancy Expenses | $ (15,003) | (15,003) | (15,003) | (15,753) | (15,753) | (15,753) |
| Shipping Supplies | $ (2,038) | (2,055) | (2,046) | (2,085) | (2,080) | (2,112) |
| Secured Lender Payments | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Cash Disbursements** | $ (94,734) | (95,064) | (101,587) | (96,395) | (96,303) | (96,908) |
| **Net Cash Flow** | $ 15,264 | 15,802 | 8,814 | 15,997 | 15,847 | 16,831 |
| Greenberg (admin) | | | | | | |
| Subchapter V Trustee (admin) | | | | | | |
| | | | | | | |
| General unsecured claims  "Release" | $ (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) |
| General unsecured claims "No Release" | $ (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) |
| **Total Plan Payments** | $ (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) |
| **Ending Cash Balance (Reserve)** | $ 6,553 | 7,355 | 1,169 | 2,166 | 3,012 | 4,843 |

Exhibit 2 Page 0030

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: <u>2049 Century Park East, Suite 2600, Los Angeles, CA 90067.</u>

A true and correct copy of the foregoing document entitled (specify): **DEBTOR'S SUBCHAPTER V PLAN OF REORGANIZATION** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>June 11, 2024,</u> I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Jonathan Arias    jarias@zwickerpc.com**
- **Keith Patrick Banner    kbanner@greenbergglusker.com,
  calendar@greenbergglusker.com;cmillerwatkins@greenbergglusker.com**
- **Russell Clementson    russell.clementson@usdoj.gov**
- **Christopher Cramer    secured@becket-lee.com**
- **John-Patrick McGinnis Fritz (TR)    jpftrustee@lnbyg.com, jpf@trustesolutions.net**
- **Amitkumar Sharma    amit.sharma@aisinfo.com**
- **United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov**
- **Larry D Webb    Webblaw@gmail.com, larry@webblaw.onmicrosoft.com**

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) <u>June 11, 2024,</u> I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Honorable Martin R. Barash
United States Bankruptcy Court
Central District of California
21041 Burbank Boulevard, Suite 342
Woodland Hills, CA 91367

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) <u>June 11, 2024,</u> I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 06/11/2024 | Cynthia Miller Watkins | */s/ Cynthia Miller Watkins* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

**2. SERVED BY UNITED STATES MAIL**:

| | |
|---|---|
| Amazon Capital Services Inc.<br>c/o K&L Gates LLP<br>Attn: Brian T. Peterson<br>925 4th Avenue, Suite 2900<br>Seattle, WA 98104<br>*(POC #14 & #15) – No Ballot Provided* | Attn: BMW Bank of North America Department<br>c/o AIS Portfolio Services, LLC<br>Account: XXXXXX7104<br>4515 N Santa Fe Ave. Dept. APS<br>Oklahoma City, OK 73118<br>*(POC #12) - Class 2 Ballot Provided* |
| FC Marketplace LLC<br>c/o Becket and Lee LLP<br>PO BOX 3002<br>Malvern, PA 19355-0702<br>*(POC #4) - Class 3/4 Ballot Provided* | LG Funding LLC<br>1218 Union Street<br>Brooklyn, NY 11225<br>*(POC #9) - Class 3/4 Ballot Provided* |
| NewCo Capital Group LLC<br>1545 Route 202<br>Suite 101<br>Pomona, NY 10970<br>*(POC #1) - Class 3/4 Ballot Provided* | SellersFunding Corp. d/b/a SellersFi<br>1290 Weston Road, Suite 306<br>Weston, FL 33326<br>*(POC #13) - Class 3/4 Ballot Provided* |

| | |
|---|---|
| Alliance Funding Group<br>17542 17th Street<br>Suite 200<br>Tustin, CA 92780<br>*(POC #2) - Class 3/4 Ballot Provided* | American Express National Bank<br>c/o Becket and Lee<br>PO BOX 3001<br>Malvern, PA 19355-0701<br>*(POC #7 & #8) - Class 3/4 Ballot Provided* |
| Bank of America NA<br>PO BOX 660441<br>Dallas, TX 75266-0441<br>*(Schedule E/F) - Class 3/4 Ballot Provided* | American Express National Bank, AENB<br>c/o Zwicker & Associates P.C.<br>PO BOX 9043<br>Andover, MA 01810<br>*(POC #11) - Class 3/4 Ballot Provided* |
| Capital One, N.A.<br>by American Infosource as agent<br>4515 N. Santa Fe Ave.<br>Oklahoma City, OK 73118<br>*(POC #10) - Class 3/4 Ballot Provided* | Encompass Supply<br>Chain Solutions<br>775 Tipton Industrial Drive<br>Lawrenceville, GA 30046<br>*(Schedule E/F) - Class 3/4 Ballot Provided* |
| Fundation Group LLC<br>11501 Sunset Hills Road, Suite 400<br>Reston, VA 20190<br>*(Schedule E/F) - Class 3/4 Ballot Provided* | Goldman Sachs Bank USA<br>PO BOX 45400<br>Salt Lake City, UT 84145-0400<br>*(Schedule E/F) - Class 3/4 Ballot Provided* |
| Marcone Supply<br>One City Place<br>Suite 400,<br>Saint Louis, MO 63141<br>*(Schedule E/F) - Class 3/4 Ballot Provided* | Reliable Parts Inc.<br>19111 N. Dallas Parkway<br>Interchange Office Center<br>Suite 240<br>Dallas, TX 75284<br>*(Schedule E/F) - Class 3/4 Ballot Provided* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

| | |
|---|---|
| Robertshaw Controls Company<br>1222 Hamilton Parkway<br>Itasca, IL 60143<br>**(Schedule E/F) - Class 3/4 Ballot Provided** | WebBank<br>2211 North First Street<br>San Jose, CA 95131-2021<br>**(Schedule E/F) - Class 3/4 Ballot Provided** |
| Citi Bank NA<br>PO Box 790046<br>Saint Louis, MO 63179-0046<br>**(Schedule E/F) - Class 3/4 Ballot Provided** | Wells Fargo Bank, N.A.<br>PO BOX 29482<br>MAC S4101-08C<br>Phoenix, AZ 85038<br>**(POC #3) - Class 3/4 Ballot Provided** |
| Department of the Treasury<br>Internal Revenue Service<br>PO BOX 7346<br>Philadelphia, PA 19101-7346<br>**(POC #5) – No Ballot Provided** | JPMC c/o National Bankruptcy Services, LLC<br>PO BOX 9013<br>Addison, TX 75001<br>**(POC #6) - Class 3/4 Ballot Provided** |
| Franchise Tax Board<br>Bankruptcy Section MS A340<br>PO BOX 2952<br>Sacramento, CA 95812-2952<br>**(POC #16) – No Ballot Provided** | Los Angeles County Tax Collector<br>Attn: Bankruptcy Unit<br>PO BOX 54110<br>Los Angeles, CA 90054-0110<br>**(Schedule E/F) – No Ballot Provided** |
| Fred Doctorovich<br>21451 Salamanca Ave.<br>Woodland Hills, CA 91364<br>**(Schedule E/F) - Class 3/4 Ballot Provided** | Maruf Bakhramov<br>8421 Canoga Ave.<br>Canoga Park, CA 91304<br>**(Schedule E/F) – No Ballot Provided** |
| Vladislav Fedorenko<br>20877 Plummer Street<br>Chatsworth, CA 91311<br>**(Schedule E/F) - Class 3/4 Ballot Provided** | |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**

**3. SERVED BY EMAIL**

| Lender Name | Email Address |
|---|---|
| FundingCircle:<br>***Class 3/4 Ballot Provided*** | proofofclaim@becket-lee.com (***POC #4***) |
| SellersFunding:<br>***Class 3/4 Ballot Provided*** | legal@sellersFi.com (***POC #13***) |
| Alliance Funding Group:<br>***Class 3/4 Ballot Provided*** | Brian Knox – bknox@afg.com (***POC #2***) |
| NewCo Capital Group LLC:<br>***Class 3/4 Ballot Provided*** | Ariel Bouskila, Esq.  – ari@bblawpllc.com  (***POC #1***) |
| LG Funding LLC:<br>***Class 3/4 Ballot Provided*** | Joe Lieberman  - joe@landklegal.com<br>Gene Rosen gene@generosen.com (***POC #9***) |
| Amazon:<br>***No Ballot Provided*** | Brian T. Peterson – Brian.Peterson@klgates.com (***POC #14 & #15***) |
| American Express National Bank:<br>***Class 3/4 Ballot Provided*** | proofofclaim@becket-lee.com (***POC #7 & #8***)<br>bkproofofclaim@zwickerpc.com (***POC #11***) |
| BMW Bank of North America<br>***Class 2 Ballot Provided*** | ECFNotices@aisinfo.com (***POC #12***) |
| Capital One, N.A.<br>***Class 3/4 Ballot Provided*** | POC_AIS@aisinfo.com (***POC #10***) |
| Wells Fargo Bank, N.A.<br>***Class 3/4 Ballot Provided*** | sblbkinquiry@wellsfargo.com (***POC #3***) |
| Internal Revenue Service<br>***No Ballot Provided*** | K. Ivory- Kerry.R.Ivory@irs.gov (***POC #5***) |
| JPMC (JP Morgan Chase)<br>***Class 3/4 Ballot Provided*** | pocquestions@nbsdefaultservices.com  (***POC #6***) |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**